# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **BARRY LEE HUGHES ET AL** | **CIVIL ACTION NO. 23-1713** |
| **VERSUS** | **JUDGE JERRY EDWARDS** |
| **SCF WAXLER MARINE LLC ET AL** | **MAG. JUDGE MCCLUSKY** |

## MEMORANDUM RULING & ORDER

Before the Court is a Motion to Dismiss for Failure to State a Claim (R. Doc. 19) filed by Defendants SCF Waxler Marine, LLC ("SCF Waxler") and M/V Jennie K, (collectively, "Defendants"). Plaintiffs, Barry Lee Hughes, Robert Med Palmer, and Kimberly Diane White Palmer (collectively, "Plaintiffs"), filed an opposition (R. Doc. 22) to Defendants' Motion and Defendants replied (R. Doc. 25). For the following reasons, Defendants' Motion to Dismiss (R. Doc. 19) is **GRANTED IN PART** and **DENIED IN PART**.

The Court also reviewed Defendants' Motion to Strike Affidavits Attached to Plaintiffs' Opposition (R. Doc. 26), Plaintiffs' opposition thereto (R. Doc. 31), and Defendants' reply (R. Doc. 32). In ruling on Defendants' Motion to Dismiss (R. Doc. 19), the Court has not considered the two affidavits attached to Plaintiffs' opposition (R. Docs. 22-1, 22-2). Accordingly, Defendants' Motion to Strike (R. Doc. 26) is **DENIED AS MOOT**.

## BACKGROUND

The instant action was brought by Plaintiffs, Barry Lee Hughes —individually, and as wrongful death beneficiary of and on behalf of the estate of his deceased son, Zeb Andrew Hughes ("Zeb")— and Robert Med Palmer ("Mr. Palmer") and Kimberly Diane White Palmer —individually, and as wrongful death beneficiaries of and on behalf of the estate of their deceased son, Jameson Med Gunner Palmer ("Gunner").[1] The facts, as alleged by Plaintiffs, are as follows.

On December 3, 2020, twenty-one-year-old Zeb and sixteen-year-old Gunner ("the Decedents"), launched a Jon boat from Letourneau Boat Ramp in Warren County, Mississippi.[2] Their intent was to scout for duck hunting holes around Davis Island on the Mississippi River.[3] When the boys failed to call home that evening, Mr. Palmer contacted Warren County law enforcement authorities to report that he had not heard from the Decedents.[4] A Warren County Sheriff's deputy reported that while the Decedents' truck and trailer were still parked at the Letourneau Boat Ramp, the Decedents, their dog, and their boat were not there.[5]

The Warren County Sheriff's Department launched two boats to search for the Decedents that night, neither of which was successful.[6] The next morning, December 4, 2020, searchers found the Decedents' overturned Jon boat and various pieces of their equipment down river.[7] Unfortunately, over the course of the next few months,

---

[1] R. Doc. 1 at 1, 6.
[2] R. Doc. 1 at 4.
[3] R. Doc. 1 at 4.
[4] R. Doc. 1 at 4.
[5] R. Doc. 1 at 4.
[6] R. Doc. 1 at 4.
[7] R. Doc. 1 at 4.

despite numerous searches by various agencies and volunteers, neither the Decedents nor their dog were found.[8]

During the investigation of the Decedents' disappearance, a witness who was observing the Mississippi River from the shoreline stated that he saw a tugboat with empty barges in tow on the Louisiana side of the river heading north across from the Letourneau Boat Ramp around the time that the Decedents had launched their boat.[9] This witness noted that he watched two boys in a Jon boat cross the river above the tugboat and barges.[10]

The Jennie K was the only tugboat seen or reported in the area at the time of the incident and was listed as an involved party in the case report of the investigation conducted by the United States Coast Guard.[11] Neither the crew nor captain of the Jennie K reported a collision with a Jon boat.[12] However, a deckhand and the first mate aboard the Jennie K on December 3, 2020, later informed investigators that they had seen an overturned camouflage skiff emerge along the port side of the tugboat and drift approximately thirty-five to forty feet to the stern of the tugboat.[13] The deckhand also stated that he saw a lifejacket and other personal effects adrift near the skiff at that time.[14] His account of these items matched descriptions of the Decedents' property.[15]

---

[8] R. Doc. 1 at 4.
[9] R. Doc. 1 at 5.
[10] R. Doc. 1 at 5.
[11] R. Doc. 1 at 5-6.
[12] R. Doc. 1 at 5.
[13] R. Doc. 1 at 5.
[14] R. Doc. 1 at 5.
[15] R. Doc. 1 at 5.

On February 7, 2022, Warren County Sheriff Martin Pace ("Sheriff Pace"), concluded his investigation, finding that the Decedents were struck by a north-bound barge, that the accident was not survivable, and that the Decedents died in the Mississippi River.[16] Plaintiffs aver that the condition of the Jon boat indicates that it was involved in a collision with another vessel.[17] Plaintiffs claim that the Jennie K is solely responsible for negligently causing the untimely death of their sons on December 3, 2020.[18]

In Count 1, Plaintiffs assert wrongful death and survival claims under La. Civ. Code Ann. Art. 2315 arising from the alleged collision.[19] The Complaint lists numerous alleged acts and omissions constituting negligence, *inter alia*, failure to maintain a proper lookout, improper navigation and speed, failure to render aid, and violation of maritime rules and regulations.[20] Plaintiffs claim that the Decedents did not die instantly, but rather sustained "a slow, painful, agonizing, and conscious death by drowning."[21]

In Count 2, Plaintiffs allege that following the collision, the operators and/or crewmembers of the Jennie K breached a statutory duty under La. R.S. 34:851.10(A) by failing to render aid to the Decedents, despite allegedly observing signs of the collision and having the ability to render aid without endangering themselves or the vessel.[22] Count 3 asserts that the same individuals further breached a separate

---

[16] R. Doc. 1 at 5; *see also*, R. Doc. 1-2.
[17] R. Doc. 1 at 6.
[18] R. Doc. 1 at 6.
[19] R. Doc. 1 at 6-8.
[20] R. Doc. 1 at 6-7.
[21] R. Doc. 1 at 7.
[22] R. Doc. 1 at 8.

statutory duty under La. R.S. 34:851.10(B)(1) by failing to immediately report the collision to authorities and failing to submit a full incident report describing the collision.[23] In Count 4, Plaintiffs allege that the violations of these statutory duties constitute negligence per se.[24]

Plaintiffs allege that as a direct and proximate result of the Defendants' acts and omissions, they have suffered significant emotional, physical, and financial harm stemming from the wrongful deaths of their sons.[25] They seek general and compensatory damages for a range of claimed injuries, including the Decedents' conscious pain and suffering prior to death, lost income and support, burial and recovery expenses, loss of society and companionship, mental anguish, and other related costs.[26] Plaintiffs request damages in an amount not less than $12 million or such other amount as the Court or a jury may deem just.[27]

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[28] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29] When considering a motion to dismiss, a court's review "is limited to (1)

---

[23] R. Doc. 1 at 8.
[24] R. Doc. 1 at 8-9.
[25] R. Doc. 1 at 9-10.
[26] R. Doc. 1 at 9-10.
[27] R. Doc. 1 at 10.
[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Lone Star Fund V (U.S.), L.P., v. Barclays Bank PLC*, 594 F.3d 383, 388 (5th Cir. 2010).
[29] *Twombly*, 550 U.S. at 556.

the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."[30]

As stated in *Twombly*, "factual allegations must be enough to raise a right to relief above the speculative level."[31] The relevant inquiry is not whether the plaintiff will succeed at trial, but rather, accepting the allegations of the complaint as true, whether plaintiff has pled a legally cognizable claim.[32] However, courts are not required to accept legal conclusions as facts.[33] Similarly, a complaint does not state a plausible claim for relief if it only sets forth a "formulaic recitation of the elements of a cause of action."[34] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[35]

## **ANALYSIS**

Defendants move to dismiss all claims asserted in Counts I through IV of the Complaint pursuant to Rule 12(b)(6).[36] First, Defendants claim that Count I "fails to meet the requisite pleading standards under 12(b)(6)" because Plaintiffs' Complaint sets forth conclusory allegations and fails to assert facts demonstrating that the

---

[30] *Covington v. City of Madisonville, Texas*, No. 18-20723, 2020 WL 2516661, at *4 (5th Cir. May 15, 2020); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).
[31] *Twombly*, 550 U.S. at 555–56.
[32] *Iqbal*, 556 U.S. at 678 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); s*ee also Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (citing *Doe ex rel. Magee v. Covington School Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012).
[33] *Iqbal*, 556 U.S. at 679.
[34] *Iqbal*, 556 U.S. at 678.
[35] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).
[36] R. Doc. 19-1.

Decedents died as a result of a collision with any vessel.[37] Second, Defendants aver that "Counts II-IV must be dismissed because La. R.S. 34:851.10(A) and (B)(1) is a criminal statute that does not create a private, civil cause of action and because it is well-settled that negligence per se is not a stand-alone cause of action."[38]

**COUNT I:  WRONGFUL DEATH AND SURVIVAL**

As to Plaintiffs' wrongful death claim, Defendants contend that the Complaint does not allege sufficient facts to plausibly show that a collision occurred between the Jennie K and the Decedents' skiff.[39] According to Defendants, the Complaint contains only conclusory allegations that a collision caused the deaths of Decedents, and those allegations are speculative and unsupported.[40] Regarding Plaintiffs' claim for survival damages, Defendants assert that Plaintiffs have not pled facts establishing that the Decedents experienced conscious pain and suffering prior to their deaths.[41] Relying on *Davis v. Parkhill-Goodloe Co.* and *Thompson v. The Offshore Company*, Defendants posit that, without more, mere allegations of drowning are insufficient to support a survival claim.[42]

Taking the allegations in Plaintiffs' verified Complaint as true and drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Count I adequately states wrongful death and survival action claims. The Complaint alleges that a skiff carrying the Decedents was observed crossing the river on a path above the Jennie

---

[37] R. Doc. 19-1 at 2.
[38] R. Doc. 19-1 at 1.
[39] R. Doc. 19-1 at 8.
[40] R. Doc. 19-1 at 8.
[41] R. Doc. 19-1 at 9.
[42] R. Doc. 19-1 at 9 (citing *Davis*, 302 F.2d 489, 495 (5th Cir. 1962); *Thompson*, 440 F. Supp. 752 (S.D. Tex. 1977)).

K.[43] Crew members of the tug allegedly observed an overturned skiff and a lifejacket matching the Decedents' belongings.[44] Plaintiffs further allege that investigation and witness testimony confirmed that the Jennie K was the only tug boat present in the area and that the recovered Jon boat exhibited damage consistent with being involved in a collision with another vessel.[45] These allegations, taken together, are sufficient to plausibly allege that a collision occurred and that it caused the Decedents' deaths.

As to the survival action, the Complaint alleges that the Decedents experienced a slow and conscious death by drowning.[46] This allegation is supported by Sheriff Pace's statements in his affidavit that the Decedents died in the Mississippi River.[47] Defendants' reliance on *Davis* and *Thompson* is misplaced because those cases addressed the sufficiency of evidence required to sustain a finding of conscious pain and suffering at the trial stage of litigation, not the sufficiency of allegations under the 12(b)(6) pleading standard.[48] While the factual support for this allegation is limited, the Court concludes that it is sufficient at the pleading stage to state a claim for conscious pain and suffering, because these facts raise a reasonable expectation that discovery may reveal evidence of the elements of this claim.

The Court finds that the Complaint, standing alone, is sufficient to survive

---

[43] R. Doc. 1 at 5.
[44] R. Doc. 1 at 5.
[45] R. Doc. 1 at 5-6.
[46] R. Doc. 1 at 7.
[47] R. Doc. 1-2.
[48] *See Davis*, 302 F.2d 489 (reversing the trial court's judgment in favor of the defendant-shipowner and holding that there was sufficient evidence in the record to find in favor of the plaintiff-decedent but noting that due to the many unknown circumstances of the plaintiff's death, substantial evidence would be required to sustain a finding of conscious pain and suffering); *Thompson*, 440 F. Supp. at 761-62 (finding that there was not enough evidence indicating that the decedents consciously survived the impact of their fall and that the exact cause of death was unknown).

Rule 12(b)(6) scrutiny. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as to Count I.

### COUNTS II – IV: FAILURE TO RENDER AID, FAILURE TO REPORT, AND NEGLIGENCE PER SE

Defendants contend that Counts II and III, which are based on alleged violations of Louisiana Revised Statute § 34:851.10, do not create a private right of action because these statutes only impose criminal penalties on boat operators who fail to render aid or report collisions.[49] They maintain that unless a statute expressly provides for civil liability, plaintiffs cannot use violations of criminal law to support civil claims.[50] With respect to Count IV, Defendants assert that negligence per se is not a recognized, independent cause of action under Louisiana law or general maritime law.[51] Defendants note that Plaintiffs failed to address any of these arguments in their opposition memorandum and ask the Court to dismiss these claims on the grounds that they have been abandoned.[52]

The Court agrees with Defendants that Counts II through IV fail to state claims for relief. Plaintiffs have not cited any authority, nor does the Court find any, suggesting that Louisiana Revised Statute § 34:851.10 provides a private right of

---

[49] R. Doc. 19-1 at 6.
[50] R. Doc. 19-1 at 5 (citing *Louisiana v. Guidry*, 489 F.3d 692, 699 (5th Cir. 2007) ("Alone, however, a criminal violation will not create tort liability."); *Gugliuzza v. K.C.M.C., Inc.*, 606 So. 2d 790, 793 (La. 1992) ("Criminal statutes are not, in and of themselves, definitive of civil liability and do not set the rule for civil liability[.]")).
[51] R. Doc. 19-1 at 6-7 (citing *Galloway v. State through Dep't of Transp. & Dev.*, 654 So. 2d 1345, 1348 (La. 5/22/95) ("The doctrine of negligence per se has been rejected in Louisiana."); *Ducote v. Boleware*, 216 So. 3d 934, 944, (La. App. 4 Cir. 2/17/16) *writ denied*, 191 So. 3d 1071 (La. 5/20/16) ("Louisiana does not recognize the negligence per se doctrine."); *Wiley v. Deutsche Bank Nat'l Trust Co.*, No. A-12-CA-03-SS, 2012 WL 13029576, at *3, n.1 (W.D. Tex. Aug. 15, 2012) ("negligence per se is not a stand-alone cause of action") (citing Restatement (Second) of Torts § 874A cmt. e, at 304 (1979))).
[52] R. Doc. 25 at 2-3.

action. The statute imposes criminal penalties for failing to render aid or report a boating accident, but it does not contain any language authorizing civil remedies. Without such an express provision, Plaintiffs cannot base civil liability on a violation of that statute. Count IV, which asserts "negligence per se," also fails because Louisiana law and general maritime law do not recognize negligence per se as a separate cause of action. Moreover, Plaintiffs' failure to address these claims amounts to abandonment thereof.[53] Considering both the legal deficiencies in the claims and the lack of opposition, the Court **GRANTS** Defendants' Motion to Dismiss as to Counts II, III, and IV.

## CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiffs have stated a plausible claim for relief under Count I of the Complaint, asserting wrongful death and survival claims arising from the alleged collision between the Decedents' Jon boat and the Jennie K. However, the Court finds that Counts II, III, and IV fail to state claims upon which relief can be granted. Plaintiffs base those claims on alleged violations of Louisiana R.S. § 34:851.10 and an independent theory of negligence per se but have not shown that the cited criminal statute provides a private right of action or that negligence per se is cognizable as a stand-alone claim under either Louisiana or general maritime law. Plaintiffs' failure to respond to Defendants' arguments concerning these claims further supports their dismissal as abandoned.

---

[53] *G & H Development, LLC v. Penwell*, 2014 WL 1248241 *4 (W.D. La. Mar. 26, 2014) (citing *Milton v. Boise Cascade, LLC*, No. 08–1857, 2011 WL 285091, *2 (W.D. La. Jan. 25, 2011); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir.1983); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir.2002)).

**ORDER**

**IT IS ORDERED** that Defendants' Motion to Dismiss (R. Doc. 19) is **DENIED IN PART** as to Count I.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (R. Doc. 19) is **GRANTED IN PART**, and Counts II, III, and IV are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (R. Doc. 26) is **DENIED AS MOOT**.

**THUS DONE AND SIGNED** in Chambers on this 1st day of August 2025.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**